THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KRYSTAL M. RAMOS-CRUZ,

     **Plaintiff,**

     **v.**

COMMONWEALTH OF PUERTO RICO,
et al.,

     **Defendants.**

Civil No. 23-1449 (ADC)

## OPINION AND ORDER

### I.    Introduction

Pending before the Court is a motion for summary judgment filed by plaintiff Krystal M. Ramos-Cruz ("plaintiff") on August 29, 2024. **ECF No. 63**. Plaintiff requests that the Court issue summary judgment in her favor on her surviving[1] claims for declaratory and injunctive relief against the defendants, the Commonwealth of Puerto Rico ("Commonwealth") and the Puerto Rico Police Bureau ("PRPB" and together with the Commonwealth, "defendants").[2] These include an "as-applied" constitutional challenge to Article 2.13 of the Puerto Rico Weapons Act of 2020 ("PRWA"), P.R. Laws Ann. t. 25, § 462*l*, under the Second and Fourth Amendments of

---

[1] Plaintiff's facial challenge under the Second Amendment ("Count I"), her equal protection claim under the Fourteenth Amendment ("Count V"), and all claims for monetary damages were dismissed by the Court on December 20, 2024. **ECF No. 66**. The Court then ordered defendants to respond to the pending motion for summary judgment that is the subject of this Opinion and Order. **ECF No. 69**.

[2] Specifically, plaintiff sued the Commonwealth through its then-Secretary of Justice, Domingo Emanuelli, and the PRPB through its then-Commissioner, Antonio López.

the United States Constitution, and under Article II, § 10 of the Constitution of the Commonwealth of Puerto Rico.[3] Plaintiff also claims violation of her due process rights under the Fourteenth Amendment. Her claims all rest on the PRPB's purportedly unlawful seizure of, and subsequent refusal to return, her firearms and firearms license as a result of her having sought a protective order against her husband due to alleged domestic abuse.

On January 28, 2025, the defendants filed a consolidated response to the motion for summary judgment and a motion to dismiss for lack of subject matter jurisdiction due to mootness, the basis being that plaintiff's firearms and license had been returned to her. **ECF No. 74**. Plaintiff, at the Court's instruction, then filed both a response to the defendants' motion to dismiss, **ECF No. 83**, and a reply in support of her motion for summary judgment, **ECF No. 84**.[4]

For the reasons set forth below, the defendants' motion to dismiss is **DENIED**, and plaintiff's motion for summary judgment is **GRANTED IN PART, DENIED IN PART**. As explained below, the Court **GRANTS** summary judgment on plaintiff's second cause of action (Count II) but **DENIES** summary judgment on plaintiff's third and fourth causes of action (Counts III and IV).

---

[3] Article II, § 10 of the Commonwealth Constitution guarantees "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures . . . ." Puerto Rico Const. Art. II, § 10.

[4] On January 22, 2025, plaintiff filed a consolidated reply and opposition to the defendants' filing. **ECF No. 77**. That was in addition to two other filings made that day by plaintiff, and none of the three complied with this District's Local Rules. *See* **ECF Nos. 78, 79**. Among other things, the Court ordered plaintiff to re-file, separately, her reply to the opposition to the motion for summary judgment and her opposition to the motion to dismiss, acting "in its discretion and for its own benefit [and] in order simplify resolution of the pending matters." **ECF No. 80**.

## II.    Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Rule 56(c) states, in pertinent

part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  L. Civ. R.  56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). *Id.* Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted . . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

## III.    Factual Findings

### A.  Use of previously undisclosed document in opposition to summary judgment.

Before stating its factual findings for the summary judgment record, the Court must first address defendants' opposing statement of material facts. **ECF No. 75**. All their proposed facts

(save one) are based on a Spanish-language sworn statement included as Exhibit 3 to said filing.

**ECF No. 75-3**. A good portion of the opposition to the motion for summary judgment is also

reliant on this document. **ECF No. 74** at 12-20. The sworn statement was made by PRPB Agent

Lizbeth Soler "during the investigation of an administrative complaint filed against her by

Plaintiff because of her actions in the incident described in Plaintiff's pleadings." **ECF No. 74** at

12.[5] It contains a detailed account of the agent's version of events, from when plaintiff first

arrived at the police station in Ceiba to when the weapons were seized from plaintiff's residence.

The defendants requested and were granted leave to file the document in the Spanish language

while they procured a translation, which was due by February 13, 2025, as per their request. *See*

**ECF Nos. 76**, **82**. However, defendants failed to submit the translation until months later, on

July 7, 2025, and only after the Court, acting on its own initiative, ordered them to submit it.

**ECF No. 85, 86**. The Court also ordered defendants to certify whether the document was in fact

produced in discovery and when. **ECF No. 85**.

Defendants complied, submitting the translation and stating that they had not produced

the document during discovery, simply "because the investigation for which the statement in

the document was taken was still under way." **ECF No. 86**. The document is dated November

9, 2023, and discovery concluded on August 15, 2024. *See* **ECF No. 53**. This document should

have been disclosed as part of defendants' initial disclosures under Fed. R. Civ. P. 26(a)(1)(ii) or

---

[5] As far as the Court can ascertain, this is the first and only time any party has disclosed the existence, much less the pendency, of any administrative complaint against a PRPB agent in relation to the facts of this case.

promptly supplemented under Fed. R. Civ. P. 26(e). This is particularly so given that defendant announced an "Agent Lizbeth Roque" as a possible witness back on June 14, 2024—assuming that this is the same agent whose sworn testimony is contained in the late-disclosed statement. **ECF No. 52**.[6] Accordingly, "a party fail[ing] to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). That the nondescript investigation was "still under way" is not a sufficient justification for this failure, and including this document on the summary judgment record would be far from harmless to plaintiff's case where discovery has ended, no party has sought to reopen it, and plaintiff has repeatedly requested summary judgment (albeit inartfully) since November 2023. *See* **ECF Nos. 18, 38, 63, 79**.

Defendants do point out that "[p]laintiff replied to [d]efendant[s'] opposition to her motion for summary judgment and did not raise any objection to defendant[s'] filing of the document notwithstanding the failure to produce the document." **ECF No. 86** at 2. This is factually correct. Plaintiff initially claimed on reply that the sworn statement was never produced to her in discovery and requested its exclusion. *See* **ECF No. 78**. The Court then ordered plaintiff to re-file her reply and reply statement of uncontested material facts because it failed to conform to the applicable rules. *See* **ECF No. 80**. Plaintiff re-filed her reply but did not re-file her reply statement, and the re-filed reply makes no mention of her previous request.

---

[6] And if not, there is the added problem of an undisclosed witness. Fed. R. Civ. P. 26(a)(1)(A)(i).

Unfortunately for defendants, however, Fed. R. Civ. P. 37(c)(1) is an automatic exclusionary rule and does not depend on it being raised by motion—it operates as a direct admonition to parties. *See Ortiz-López v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001) (exclusion "is a 'self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion . . . .'" (quoting Fed. R. Civ. P. 37 advisory committee notes to 1993 amendments)). Only the additional or substitute sanctions provided for in subparagraphs (A) through (C) of the Rule are contingent "on motion and opportunity to be heard." Fed. R. Civ. P. 37(c)(1)(A)-(C). Therefore, the Court cannot simply turn a blind eye even when the matter was brought to the Court's attention in a now superseded reply.

The result of this documentary mishap is that defendants' opposing statement of material facts is largely inadmissible because it relies on a document that was not timely disclosed or supplemented under Fed. R. Civ. P. 26(a) or (e). Accordingly, the Court will not consider it when making its findings of fact for the summary judgment record, which it proceeds to do below.[7]

**B.  The uncontested material facts.**

The Court draws the following factual findings from the parties' admissions on the record and those statements of proposed facts submitted by plaintiff that comply with L. Civ. R. 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008).[8] Although the

---

[7] This ruling does not preclude the presentation at trial of any witness with appropriate knowledge of facts contained in the sworn statement. It is the document that is being excluded.

[8] Around half of the facts proposed by plaintiff were admitted by defendants without qualification. *See* **ECF No. 75**.

Court reviewed every properly submitted proposed fact, it will only consider and include below those that are material and uncontested for purposes of summary judgment. Any proposed fact not included below is to have been deemed immaterial, contested, or unsupported.

Plaintiff, Krystal M. Ramos-Cruz, is a citizen of the United States and a resident of Ceiba, Puerto Rico, and her occupation is that of a private security officer. **ECF No. 31** at 1, ¶ 1; **ECF No. 49** at 1, ¶ 1. Plaintiff legally obtained and possessed a firearms license, firearms, and ammunition. **ECF No. 63-2** at 3, ¶ 5. Plaintiff, her husband, and her father-in-law, Moisés Rosa-Morales, all resided in the same house in Bo. Chupacallo, Carr. 978 KM 4.8, Ceiba, Puerto Rico. **ECF No. 63-2** at 3, ¶ 9.

On November 19, 2022, after an argument with her husband, plaintiff left her residence in Ceiba and went to Luquillo where she called the police to make a report against him for domestic violence. **ECF No. 63-2**, at 3, ¶ 6. At the Luquillo Police Station, PRPB agents seized plaintiff's firearms license. **ECF No. 63-2** at 3, ¶ 8. The agents then travelled to plaintiff's house, where her father-in-law was present, and proceeded to enter the home, where they seized her weapons and ammunition. **ECF No. 63-2** at 3-4, ¶ 10. This was done without her permission and without a court order, pursuant to Article 2.13 of PRWA. *Id.* The next day, on November 20, 2022, an *ex parte* temporary restraining order was entered in plaintiff's favor and against her husband. **ECF No. 63-2** at 4, ¶ 11.

A temporary seizure under Article 2.13 of PRWA is treated as an administrative matter by the defendants. *Id.*, at 6 ¶ 24. Once such a seizure is carried out, a receipt in the form of "Form

PPR.618.4" is given to the owner, which gives notice of his or her right as a licensed owner to request an administrative hearing to establish the circumstances of the events that led to the seizure and why the property should be returned. *Id.*, at ¶ 25.[9]

On June 12 and July 12, 2023, plaintiff went to the PRPB headquarters to request the return of her firearms license, weapons, and ammunition; however, she was denied their return because she was under investigation. **ECF No. 63-2** at 4, ¶ 12. Although plaintiff had not been accused of committing any crime, the PRPB checked the National Crime Information Center for the seized firearms, finding no results for any criminal activity. *Id.*, at ¶ 14. The defendants have in place a standard procedure whereby they undertake a criminal investigation of persons from whom a firearm is seized, without requiring a court order and without suspicion of having committed a crime, pursuant to the broad discretion provided by Article 2.13 of PRWA. *Id.*, at ¶ 15. The defendants have no evidence that plaintiff has failed to comply with either Articles 2.02(A) or 2.09 of PRWA. *Id.*, at 5, ¶ 19. Plaintiff's firearms and license were returned to her on or about October 15, 2024, after the filing of the complaint of caption. **ECF No. 75** at 6, ¶ U.

## IV.    Discussion

Turning now to plaintiff's claims, these are all brought under 42 U.S.C. § 1983. Accordingly, "[t]o succeed, [plaintiff] must show: (1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated [her] constitutional

---

[9] In yet another documentary *faux pas*, neither party thought it proper to submit a translation of the actual Form PPR.618.4 given to plaintiff. Only the Spanish-language version is on record. *See* **ECF No. 63-6** at 10-11.

or federal statutory rights." *Miller v. Town of Wenham Massachusetts*, 833 F.3d 46, 51 (1st Cir. 2016); *see also Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 541 n.1 (1st Cir. 2021) ("For purposes of section 1983, Puerto Rico is the functional equivalent of a state."). The parties do not dispute that plaintiff meets the first element, and the Court sees no reason to disagree: plaintiff's firearms and license were seized by PRPB agents acting under the color of Article 2.13 of PRWA. However, the parties strongly dispute whether the seizure violated plaintiff's constitutional rights.

In her second cause of action ("Count II"), plaintiff claims that "[b]y maintaining and enforcing a set of customs, practices, and policies depriving [p]laintiff of her protected rights to self-defense and lawfully obtained weapons," defendants are violating her Second Amendment right to keep and bear arms, as incorporated against Puerto Rico under the Fourteenth Amendment.[10] *See* **ECF No. 31** at ¶ 57; **ECF No. 63** at 3. Plaintiff's third cause of action ("Count

---

[10] The Court is not aware of, and the parties do not provide, any federal court decision extending the right to keep and bear arms protected by the Second Amendment to the people living in Puerto Rico—that is, finding that the Second Amendment constrains the Commonwealth's ability to regulate firearms possession. Notably, the Puerto Rico Supreme Court held as much in *Pueblo v. Rodríguez López*, 210 P.R. Dec. 752, 766, 782 (P.R. 2022), although it is not clear whether it considered it applicable through the Fourteenth Amendment or through the doctrine of territorial incorporation. It would be within this Court's competence to determine whether the Second Amendment does indeed apply in Puerto Rico and by what means, *see In re Conde Vidal*, 818 F.3d 765, 766 (1st Cir. 2016), but because defendants do not question its application, it is unnecessary for the Court to do so. Instead, the Court proceeds on the assumption that the right protected by the Second Amendment applies in Puerto Rico as a fundamental right. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."); *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 599 n.30 (1976) (explaining the doctrine of territorial incorporation of fundamental rights according to the so-called *Insular Cases*); *cf.* Maggie Blackhawk, *Foreword: The Constitution of American Colonialism*, 137 Harv. L. Rev. 1, 53 (2023) ("The Supreme Court held that, outside of those rights deemed 'fundamental' by the courts, Congress had the power to decide piecemeal which aspects of the Constitution applied to 'foreign' lands as the political

III") claims that the defendants, acting under Article 2.13 of PRWA, violated her right to be free from unreasonable searches and seizures under the Fourth Amendment as well as Article II, § 10 of the Commonwealth's Constitution, by seizing her weapons license and guns from her home without a warrant. **ECF No. 31** at ¶ 67; **ECF No. 63** at 3. Finally, plaintiff's fourth cause of action ("Count IV"), as asserted in her motion for summary judgment, raises a procedural and substantive due process claim aimed at the PRPB's lack of an administrative procedure to adjudicate seizures under Article 2.13 of PRWA. **ECF No. 31** at ¶ 72; **ECF No. 63** at 3.[11]

In her motion for summary judgment, plaintiff requests that the Court issue both declaratory and injunctive relief on her claims. Specifically, plaintiff requests that the Court declare the following:

> 1) Article 2.13 of the [PRWA] authorizing the warrantless seizure of the People's right to keep and bear arms, weapons licenses, weapons and ammunitions, as . . . applied by [d]efendants, is too broad and therefore unconstitutional.

> 2) Article 7.06 of the PRWA authorizes an informal administrative procedure under the ["]Government of Puerto Rico Uniform Administrative Procedure Act," [P.R. Laws Ann. t. 3, § 9601].

> 3) The ["]Government of Puerto Rico Uniform Administrative Procedure Act" [P.R. Laws Ann. t. 3, § 9601] informal procedure, as well as the formal procedure, requires the agency to adopt regulations to govern it.

---

branches exercised unlimited power to govern those lands. The *Insular Cases* and the doctrines they codified continue to structure the colonial relationship between our island borderlands and the United States today.").

[11] Previously, defendants had consciously decided not to seek dismissal of the due process claim. *See* **ECF No. 35** at 18 n.6 ("Should this motion be granted, plaintiff's only surviving claim would be her Fourteenth Amendment Due Process claim."). In what appears to be an oversight, defendants failed to oppose plaintiff's request for summary judgment on Count IV alleging violations of due process. *See* **ECF No. 63** at 16-19.

4) Neither the PRWA nor its regulation, Regulation 9172, adopted regulations to govern an administrative procedure in compliance with [t]he ["]Government of Puerto Rico Uniform Administrative Procedure Act" 3 L.P.R.A §§ 9601.

**ECF No. 63** at 20. She also requests that the Court issue an injunction against the defendants ordering them to:

1) Refrain from enforcing article 2.13 of [PRWA];

2) Refrain from enforcing an administrative procedure until an adoption of regulations to govern such a procedure occurs;

3) Refrain from enforcing an administrative procedure that is voluntary by law unless the seized party voluntarily submits to it; [and]

4) Order Johnny Acevedo, Director of the Licensing Office the immediate return of Plaintiff's weapons license, weapons and ammunition without any further procedure or delay.

*Id.*

Before analyzing whether plaintiff is entitled to summary judgment on any of her claims, the Court must first resolve a threshold issue raised by defendants in their opposition to summary judgment. There, defendants moved for dismissal of all claims, injunctive and declaratory alike, based on lack of Article III standing due to mootness. *See* **ECF No. 74** at 4-8.

**A.  Whether plaintiff's claims have become moot.**

As established by the facts, it is undisputed that the PRPB returned to plaintiff the seized firearms and firearm license that form the basis of her claims. Defendants argue that plaintiff no longer has standing to challenge the constitutionality of Article 2.13 of PRWA because there is no longer a live controversy for this Court to adjudicate.

The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). Mootness implies that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022) (cleaned up)). In simple terms, "[s]ometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240, (2024).

Plaintiff argues that the controversy is not mooted by defendants' actions because the "voluntary cessation doctrine prevents [the] defendant[s] from avoiding judicial review simply by temporarily halting an illegal practice." **ECF No. 83** at 2. She posits that, notwithstanding defendants' return of her firearms and license, they "retain[] the authority to seize her firearms without due process" and thus she "remains at risk of further arbitrary confiscations[.]" *Id.*, at 2-3.[12] Though plaintiff implies that this is a "doctrine," case law treats it as an *exception* to the mootness doctrine. The Court will therefore address it as such.

---

[12] In addition, plaintiff perfunctorily invoked the separate "capable-of-repetition-yet-evading-review" exception. *Id.*, at 3 (citing *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). Even if the Court considered this undeveloped argument on its merits, it would find it inapplicable to the circumstances at hand because the situation was not so short in duration that it would evade review: plaintiff's firearms and license were held by the PRPB for close to two years before their return—plenty of time to seek review.

First, the voluntary cessation exception "applies in situations in which a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case . . . and there exists a reasonable expectation that the challenged conduct will be repeated following dismissal of the case." *Corrigan v. Bos. Univ.*, 98 F.4th 346, 353 (1st Cir. 2024) (citation modified). The burden of establishing mootness in these situations lies with the party asserting it. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This is because "a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 54 (1st Cir. 2013) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). Accordingly, to prevail on their mootness claim, defendants must clearly establish that they did not return plaintiff's firearms and license to avoid this litigation, or that it is unreasonable to expect that plaintiff's firearms and/or license would be seized again under the specific provision of Article 2.13 of PRWA at issue here. Defendants provide no such assurances.

As per the undisputed facts, PRPB's seizure was made without a warrant and pursuant to a broadly worded exception to the warrant requirement included in Article 2.13 of PRWA. That statute reads, in relevant part, as follows:

> Any law enforcement officer shall temporarily seize the license, firearms, and/or ammunition of a citizen if he has grounds to believe that the firearms license holder has used or shall use said firearms and ammunition unlawfully to harm other persons; for uttering threats to commit a crime; for stating the intention to commit suicide; for repeatedly demonstrating negligence or carelessness in handling the firearm; when it is believed that the firearms license holder has a mental illness, is considered to be a habitual drunkard, or is addicted to controlled

substances; or in any other situation of grave risk or danger that warrants the seizure.

P.R. Laws Ann. t. 25, § 462*l*.[13] The record before the Court shows that none of the enumerated exceptions applied to plaintiff's situation when she sought assistance from the PRPB. Rather, the PRPB effectuated the seizure pursuant to the last, broadly worded clause: "in any other situation of grave risk or danger that warrants the seizure." *Id.*

The record also evinces no discernible explanation for defendants' decision to return plaintiff's firearms and license. In fact, the signed forms authorizing the release of the firearms and license back to plaintiff provide no reason for their return. Also, their return occurred a mere month and a half after plaintiff filed suit. On the other hand, defendants continue to press their defense of Article 2.13 seizures on the merits. These facts, as presented on the record, suggest that the return of the firearms is precisely an attempt to moot this case without addressing the underlying threat of enforcement that plaintiff complains of. Under these circumstances, the Court cannot conclude that defendants will not again enforce the purportedly unconstitutional statute against plaintiff. In other words, were plaintiff to have to, once again, seek out police protection and file for a temporary restraining order against her husband for domestic violence, it is far from certain that she would not be again subjected to a warrantless search of her home and seizure of her firearms under Article 2.13 of PRWA.

---

[13] Not at issue here is Article 2.13's second paragraph, which authorizes law enforcement officers "to temporarily seize the firearms, licenses, and ammunition of license holders when they are arrested for committing a felony or a misdemeanor involving violence." P.R. Laws Ann. t. 25, § 462*l*.

Sanctioning this result with a dismissal would mean that defendants would be "free to return to [their] old ways." *Friends of the Earth, Inc.*, 528 U.S. at 189 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

Accordingly, the voluntary return of plaintiff's firearms and license does not moot the case and controversy before the Court.[14] It does, however, moot her request for injunctive relief seeking their immediate return. But plaintiff still maintains the right to request declaratory and prospective injunctive relief against the purportedly unconstitutional conduct of defendants.

### B.  Whether defendants violated plaintiff's constitutional rights.

In his June 25, 2024 Report and Recommendation, U.S. Magistrate Judge Héctor L. Ramos-Vega recommended the dismissal of plaintiff's facial challenge against Article 2.13 of PRWA under the Second Amendment because plaintiff could not establish that Article 2.13 was unconstitutional in all of its applications. *See Ramos-Cruz v. Puerto Rico*, No. CV 23-1449 (ADC)(HRV), 2024 WL 5290902, at *5 (D.P.R. June 25, 2024), **ECF No. 54** at 14-15, *report and recommendation adopted*, No. CV 23-1449 (ADC), 2024 WL 5185711 (D.P.R. Dec. 20, 2024), **ECF No. 66**. Nonetheless, the Magistrate Judge recommended denying the motion to dismiss as to plaintiff's as-applied challenge under the Second Amendment. *Id.*, at *6-7, **ECF No. 54** at 11-15. Later, in adopting the Magistrate Judge's recommendation, the Court explained:

---

[14] The Court finds it unnecessary to consider defendants' other standing arguments. *See Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904 (1st Cir. 2024) (citing *Friends of the Earth*, 528 U.S. at 189-90, for the rule that "an action is mooted by the loss of a personal stake mid-litigation **unless** an exception to mootness applies." (emphasis added)).

[T]he Second Amendment protects the right to keep and bear arms in general, not the right to keep and bear a particular firearm.[15] Accordingly, a governmental seizure of a specific firearm does not *ipso facto* run afoul of the Second Amendment. That seizure must be measured under the reasonableness standard of the Fourth Amendment.

. . .

Nevertheless, section 213 of PRWA also allows the PRPB to seize a person's firearm license . . . . [T]he seizure of a specific firearm **and** a subsequent bar on "keeping or acquiring" additional firearms, together, may amount to an impermissible infringement of Second Amendment rights.

. . .

Here, to the extent that the seizure of plaintiff's license prevents her from keeping or acquiring firearms other than those that were seized, section 2.13 of PRWA could plausibly be subject to a colorable constitutional challenge under the Second Amendment.

. . .

The Commonwealth's burden under the *Bruen-Rahimi* test is to justify the application of section 2.13 of PRWA to the seizure, and it may do so by pointing to analogous historical laws and regulations that sufficiently reflect the principles that the disarmament provision at issue here seeks to implement.

*Ramos-Cruz v. Puerto Rico*, No. CV 23-1449 (ADC), 2024 WL 5185711, at *4-5 (D.P.R. Dec. 20, 2024), **ECF No. 66** at 8-10.

---

[15] The Court relied on several cases pre-dating *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), for this conclusion. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014); *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011); *Richer v. Parmelee*, 189 F. Supp. 3d 334 (D.R.I. 2016); *Tirado v. Cruz*, No. CIV. 10-2248 CVR, 2012 WL 525450 (D.P.R. Feb. 16, 2012). Plaintiff does not challenge the conceptual distinction traced by the Court, but she does cite to the Third Circuit's post-*Bruen* opinion in *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3d Cir. 2022). That court squarely held that the Second Amendment "forbid[s] unjustifiable burdens on the right to 'keep' one's own arms," disagreeing with the rationale adopted by the Court here. *Frein*, 47 F.4th at 256. However, the Court does not subscribe to *Frein's* broad interpretation of the Second Amendment because it may lead to subjecting all police seizures of firearms to a "history and tradition" analysis rather than the standard reasonableness test under the Fourth Amendment. Nothing in the Supreme Court's recent Second Amendment decisions suggests that it intended to unsettle or displace established Fourth Amendment case law as it relates to firearms.

With this as prologue, and after having analyzed the amended complaint and the parties'
filings, the Court frames the pertinent issues as follows: First, whether Article 2.13's grant of
authority to police officers to temporarily seize firearms, ammunition, and firearms licenses
where the police officer believes there is grave risk or danger, as applied to an alleged victim of
domestic violence, is unconstitutional under the Second Amendment. Second, whether Article
2.13's grant of authority to police officers to temporarily seize firearms, ammunition, and
firearms licenses from an alleged victim of domestic violence (1) in her home, (2) without a
warrant, and (3) pursuant to the police officer's belief that the situation poses a grave risk or
danger, is unconstitutional under the Fourth Amendment and Article II, § 10 of the
Commonwealth's Constitution. Third, whether the defendants' current regulations and
procedures provide post-deprivation due process to a lawful firearm owner seeking the return
of firearms and firearms licenses seized pursuant to Article 2.13.

The Court will analyze these questions in turn, mindful that the particular facts of this
case may at times require the discussion on one constitutional issue to overlap with that of
another. In addition, the Court observes, that plaintiff's as-applied challenges under the first
and second issues described above are limited in scope to her circumstances, which means that
Court must determine, using the evidence before it, what those circumstances are. In other
words, whether Article 2.13 of PRWA survives plaintiff's as-applied challenges depends on her
circumstances as established by the summary judgment record.

**1.  Whether Article 2.13 of PRWA, as applied to plaintiff, violates the Second Amendment.**

A statute survives constitutional scrutiny under the Second Amendment if it complies with a two-step framework. First, under *Bruen*, the Court must determine whether the conduct regulated by the challenged statute is covered within the plain text of the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). "Plain-text coverage establishes a presumption of protection under the Second Amendment . . . ." *Capen v. Campbell*, 134 F.4th 660, 668 (1st Cir. 2025). In the second step, as explained in *Rahimi*, the Court must consider:

> [W]hether the challenged regulation is consistent with the principles that underpin our regulatory tradition . . . . A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances . . . . Why and how the regulation burdens the right are central to this inquiry.

*United States v. Rahimi*, 602 U.S. 680, 692 (2024) (citing *Bruen*, 597 U.S. at 26-31).

Defendants do not contest that plaintiff meets the plain-text prong, and the Court is satisfied that she does. As to the history-and-tradition prong, defendants rely exclusively on *Rahimi* to justify Article 2.13 of PRWA's disarmament provision. *See* **ECF No. 74** at 17-21.[16] The Court's second-step inquiry thus starts with *Rahimi*'s holding: "An individual found by a court

---

[16] For its factual support, defendant relies heavily on the undisclosed sworn statement that has been excluded under Fed. R. Civ. P. 37(c). The Court's analysis thus focuses on whether the uncontested material facts on record support disarmament under *Rahimi*.

to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 602 U.S. at 702.

Defendant argues that *Rahimi* stands for the proposition that "dangerousness" is a proper basis on which to disarm an individual. The statute at issue in that case was 18 U.S.C. § 922(g)(8), which bars a person from possessing a firearm when he or she:

> [I]s subject to a court order that—
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
>      (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

18 U.S.C. § 922(g)(8). The text of the statute is clear in that it applies when a court, *after* the subject is given notice and an opportunity to be heard, makes the finding of "dangerousness" or explicitly proscribes the use of force. Accordingly, the Supreme Court's recognition on "dangerousness" as a permissible historical justification for disarmament must be somewhat cabined to the specific "how" and "why" of the statute at issue there.

The Supreme Court in *Rahimi* relied principally on two historical analogues from the 18th and 19th centuries to uphold the constitutionality of Section 922(g)(8). Those were surety and

going armed laws. Surety laws "provided a mechanism for preventing violence before it occurred," while going armed laws "provided a mechanism for punishing those who had menaced others with firearms." 602 U.S. at 697. Surety laws worked by imposing a temporary bond on a person deemed to be dangerous to another to assure future good behavior. *Id.*, at 696. "Going armed" laws worked as a limit on the permissible use of firearms in public. *Id.*, at 697. Importantly, both types of statutes required "judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.*, at 699. Therefore, while the Supreme Court's analysis supports the notion that a person's dangerousness to others may be a proper basis for disarmament, it did so on the assumption that a court would make that finding after providing a certain modicum of due process for the individual.

Article 2.13 does not provide for any such pre-disarmament procedure, and that suggests that *Rahimi* is not a good analogy for Article 2.13—much like trying to fit a square peg in a round hole. Article 2.13 allows a police officer to make the determination of dangerousness prior to any judicial process and based on his or her subjective appreciation of a situation's dangerousness. Defendants must propose appropriate historical analogues that functioned similarly to Article 2.13 in terms of the *how* and the *why* of a person's disarmament. Citing to *Rahimi's* dangerousness principle, without more, is not enough. Even though *Rahimi* substantially smoothed its edges, it did not do away with *Bruen's* need for nuanced analogical

reasoning. Defendants failed to present any comparable analogues, and surety and going armed laws are, on their face, poor fits for Article 2.13 as applied to plaintiff.

Moreover, the *why* behind plaintiff's disarmament is inapposite to the facts of *Rahimi*. The summary judgment record (such as it is) suggests that plaintiff was dispossessed of her firearm and firearms license solely because she (i) she was a firearms owner, and (ii) sought the government's protection against her husband in a domestic violence dispute. According to the uncontested material facts on record, which the Court reads in the light most favorable to the non-movant defendants, plaintiff is a citizen of the United States, employed as a private security officer, and had legally obtained and possessed a firearms license, firearms, and ammunition. She exercised her right to seek a protective order against her husband as an alleged victim of domestic violence under Puerto Rico law. After taking her complaint and being informed of the presence of firearms in the house, the PRPB went to the residence to detain her husband and seized several firearms. The PRPB also seized and retained plaintiff's weapons license. No warrant was ever issued for the seizure of either. Even after plaintiff withdrew her domestic violence complaint against her husband and repeatedly requested the return of her firearms and weapons license, she was refused.[17] The PRPB retained both her firearms and license until on or about October 15, 2024, when they were returned to plaintiff. This happened a month and a half after she commenced the present action against defendants, on August 31, 2024.

_____

[17] Strikingly, after having also seized the alleged aggressor's firearms, the PRPB promptly returned them to him.

As the record stands, plaintiff's only relevant characteristic is being a purported victim of domestic violence who seeks a protective order. *Rahimi* involved the exact opposite situation: the disarmament applied to the person *against* whom a domestic violence restraining order has been issued. The Supreme Court found that the surety and going armed laws justified disarming a person "who poses a credible threat to the physical safety of another," and a person against whom a domestic violence restraining order has been issued is such a person. It stretches logic to find that the putative victim of domestic abuse can be disarmed under the same standard.[18]

When interpreted holistically, Article 2.13 suggests that its residual "grave risk or danger" clause only means to refer to situations like the ones immediately listed before it. That is, applying the *ejusdem generis* canon of statutory construction, "grave risk or danger" should be interpreted to extend to situations similar to when "the firearms license holder has used or shall use said firearms and ammunition unlawfully to harm other persons; for uttering threats to commit a crime; for stating the intention to commit suicide; for repeatedly demonstrating negligence or carelessness in handling the firearm; when it is believed that the firearms license holder has a mental illness, is considered to be a habitual drunkard, or is addicted to controlled substances . . . ." P.R. Laws Ann. t. 25, § 462*l*. All these instances evince a risk of danger to the person, to others, or to the community at large. Therefore, any circumstance posing a "grave

---

[18] Of course, a person who exercises his or her right to keep and bear a firearm for self-defense purposes may be thought of, in the abstract, as posing a credible threat of physical harm against his or her aggressor. But that defies the logic behind the Second Amendment—the use of firearms in self-defense is at the core of the constitutional right. *D.C. v. Heller*, 554 U.S. 570, 630 (2008). It would be unreasonable to justify disarmament under this premise.

risk or danger" should be comparable to the listed ones, if not already encompassed by these. To say that an alleged domestic abuse victim with a firearm presents a situation of comparable risk or danger to a drunk, a drug addict, or a mentally ill individual with a gun is, to put it mildly, unreasonable.

In sum, *Rahimi* would likely justify upholding Puerto Rico laws disarming persons *against* whom an accusation of domestic violence has been made. *See, e.g.*, P.R. Laws. Ann. t. 8, § 621 (temporarily disarming a person against whom a court issues a restraining order). However, it is a stretch to say that because *Rahimi* validated a federal disarmament statute based on a person's dangerousness to others, the broad, subjective criteria provided for in Article 2.13 of PRWA is *ipso facto* constitutional. And although defendants were on notice of their burden, they do not purport to explain how Article 2.13's broad residual clause is analogous with the United States' historical tradition of firearms regulation. For this reason, the Court finds that, on the record before it, Article 2.13 of PRWA is unconstitutional as applied to disarm a duly licensed firearms owner who seeks a restraining order for allegations of domestic violence. The motion for summary judgment is **GRANTED** as to plaintiff's second cause of action.

### 2. Whether Article 2.13 of PRWA, as applied to plaintiff, violates the Fourth Amendment.

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. For its part, Article II, § 10 of the Commonwealth

Constitution provides for virtually identical protections, although its contours have been interpreted as being somewhat broader than its federal counterpart. P.R. Const. Art. II, § 10; *see, e.g., People v. Rivera-Colón*, 128 P.R. Dec. 672; 1991 PR Sup. LEXIS 212 (official translation).

Plaintiff claims that the PRPB's warrantless search of her home and seizure of her firearms conducted under Article 2.13 of PRWA violated her rights under both constitutional provisions. However, the Court is precluded from adjudicating plaintiff's non-federal constitutional claims under 42 U.S.C. § 1983. "By the terms of the statute itself, a section 1983 claim must be based upon a *federal* right." *Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Plaintiff provides no basis on which to request relief from this Court for her non-federal constitutional claims. The Court's analysis will therefore center on her federal constitutional rights.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (citation modified). The ultimate touchstone of Fourth Amendment searches and seizures, however, is reasonableness, *Lange v. California*, 594 U.S. 295, 301 (2021), and there are exceptions to the warrant requirement. One of these is consent: "The prohibition [against warrantless searches and seizures] does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citation modified).

In this case, there is uncontroverted evidence on the summary judgment record that plaintiff's father-in-law resided with her in a house he owned and that he was present when the search and seizure occurred. *See* **ECF No. 63-2** at 3, ¶ 9 ("The Plaintiff, her husband[,] . . . and her father-in-law . . . all resided in the same house . . . ."); **ECF No. 31** at ¶ 16 ("On [the PRPB officers'] arrival, only my father-in-law was at the house."); *see also* **ECF No. 63** at 2 n.1 ("The father-in-law is the legal owner of [plaintiff's residence]."). Plaintiff's efforts to invalidate Article 2.13 under the Fourth Amendment focus on defeating the application of the "exigent circumstances" exceptions to the warrant requirement, in particular, the so-called "emergency aid" or "community caretaking" exception. *See* **ECF No. 63** at 15-16. The Commonwealth's opposition to summary judgment on Count III, however, does not rely on exigent circumstances but on plaintiff's father-in-law having given consent to the search of the residence. **ECF No. 74**. Instead of addressing that argument, plaintiff chose to continue tilting at windmills, rehashing instead her argument against the application of the community caretaking exception. **ECF No. 77** at 4-5. She does not qualify or contest the Commonwealth's argument that her father-in-law gave valid consent to enter the house, making the search and seizure reasonable under the Fourth Amendment.

Based on the uncontested fact that her father-in-law was present at the time of the seizure and that he owned and resided in the house where plaintiff kept her firearms and ammunition, the Court finds that there is a live controverted issue of material fact regarding plaintiff's father-in-law's role in permitting the PRPB's entrance to the shared residence. Plaintiff has failed to

persuade the Court that she is entitled to summary judgment as a matter of law on her Fourth

Amendment claim. Accordingly, the motion for summary judgment as to Count III is **DENIED**.

> **3.  Whether Article 2.13 of PRWA, as applied to plaintiff, violates her right to Due Process.**

The Court begins by establishing that the Constitution's guarantee of due process of law

extends to the people of Puerto Rico under either the Fifth or Fourteenth Amendment. *See*

*Rodríguez v. Popular Democratic Party*, 457 U.S. 1, 7 (1982); *Examining Bd. of Eng'rs, Architects &*

*Surveyors v. Flores de Otero*, 426 U.S. 572, 599-601 (1976). This guarantee protects "the individual

against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). It is

understood to have "both procedural and substantive components." *Harron v. Town of Franklin*,

660 F.3d 531, 535 (1st Cir. 2011). Plaintiff here challenges Article 2.13 of PRWA under both

understandings of due process, which the Court construes as follows: a claim that Article 2.13

deprives her of her Second Amendment right to keep and bear arms without either substantive

or procedural due process of law.[19]

> **a.  Substantive due process.**

The substantive due process protections extend against both arbitrary legislative and

executive actions. *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). When, as here, a court is

---

[19] In her due process claim, plaintiff also lumped in her rights under Article II, § 10 of the Commonwealth's Constitution. **ECF No. 31** at ¶ 60. Because the Court has already found that non-federal claims are not cognizable under 42 U.S.C. § 1983, it will not consider a due process challenge to plaintiff's non-federal constitutional rights.

called to analyze a legislative act under a substantive due process challenge, it must undertake

a three-part inquiry:

> First, we ask whether a party has adequately alleged a right recognized as
> fundamental. Then, we assess whether the government conduct at issue is alleged
> to have restricted that right. The work does not stop there – because regardless of
> how that second question is answered, the conduct still must withstand the
> appropriate level of constitutional scrutiny. Indeed, if the answer is yes, the
> conduct is alleged to have restricted a fundamental right, then we examine
> whether the restriction satisfies the appropriate level of heightened scrutiny; if the
> answer is no, then we determine whether the government conduct survives
> rational basis review.

*Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 347 n.14 (1st Cir. 2025).

Importantly, however, "where a particular Amendment provides an explicit textual

source of constitutional protection' against a particular sort of government behavior, that

Amendment, not the more generalized notion of 'substantive due process, must be the guide for

analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)

(Rehnquist, C.J.) (citation modified); *see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't*

*Prot.*, 560 U.S. 702, 721 (2010) (citing *Albright*). Although the exact contours of substantive due

process protections are not etched in stone, it is evident here that the Second Amendment

protects the right plaintiff seeks to vindicate. "Substantive due process is an inappropriate

avenue of relief when the governmental conduct at issue is covered by a specific constitutional

provision. *Pagán v. Calderón*, 448 F.3d 16, 33 (1st Cir. 2006) (citing *S. County Sand & Gravel Co. v.*

*Town of S. Kingstown*, 160 F.3d 834, 835 (1st Cir. 1998)). That is the case here, and because

plaintiff's right to keep and bear arms is textually protected by the Second Amendment, her

claim against the deprivation of such right must be evaluated under that provision (which the Court has already done), not under a substantive due process framework.[20]

### b. Procedural due process.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Accordingly, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.*, at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "To establish a procedural due process violation, a plaintiff must show that (1) [she] was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate." *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 11 (1st Cir. 2013).

Plaintiff's fourth cause of action (Count IV) claims that defendants lack any adequate pre- or post-deprivation process for a person deprived of a firearm, ammunition, or firearm license under Article 2.13 of PRWA to obtain her property back. Plaintiff points to apparent inconsistencies in Article 7.06 of PRWA, P.R. Laws Ann. t. 25, § 467e, the PRPB's implementing

---

[20] Moreover, applying the full substantive due process inquiry to her claim would result in the application of means-end scrutiny to Article 2.13 of PRWA—an outcome explicitly forbidden by the Supreme Court's recent Second Amendment jurisprudence. *See Bruen*, 597 U.S. at 24; *see also Rahimi*, 602 U.S. at 706 (Sotomayor, J., concurring) (noting *Bruen's* rejection of "the means-end scrutiny that this Court . . . regularly uses . . . in cases involving other constitutional provisions . . . .") (citation modified).

regulation, and in the Government of Puerto Rico Uniform Administrative Procedure Act, P.R. Laws. Ann. t. 3, §§ 9601-9713 ("UAPA").

Plaintiff's pre-deprivation claim is a *non-sequitur*. The seizure of her firearms and firearms license is best analyzed under a Fourth Amendment rubric. But the years-long retention of her firearm and firearms license is a proper post-deprivation claim. In a nutshell, plaintiff's argument goes like this: Article 7.06 of PRWA requires that "all determinations that must be made pursuant to this Act shall be governed by the provisions on informal hearings, adjudications, and reconsiderations established in" the UAPA. P.R. Laws Ann. t. 25, § 467e. The UAPA, in turn, contains many safeguards as to the *formal* adjudication process, but is largely silent on those governing *informal* adjudications. It does confer on agencies the power and duty to "adopt regulations to govern their adjudicative proceedings." P.R. Laws Ann. t. 3, § 9642. And so, reference is then had to PRPB Regulation No. 9172 (Mar. 17, 2020). However, at Chapter 15, Part A.25, the Regulation merely restates what Article 7.06 of PRWA says, referring back to the AUPA for the rules governing informal adjudication proceedings.[21]

In isolation, this situation presents a concerning fact scenario. But there is evidence on the record to suggest that the PRPB does have some sort of procedure available for a person to obtain the return of property seized under Article 2.13 of PRWA. It is uncontested that plaintiff was handed "Form PPR.618.4." **ECF No. 63-2** at 6, ¶ 25. That form contains language to the effect that

---

[21] Because the Court is denying summary judgment on other grounds, it will not require compliance with L. Civ. R. 5(c) at this time. For good measure, the Court takes notice that an official Spanish-language copy of Regulation 9172 is publicly available at https://biblioteca.policia.pr.gov/ as well as in Westlaw, PRS ADC DSP Reg. 9172.

plaintiff can request the return of the seized property if she follows a certain procedure. *Id.* This is evidence that some sort of administrative process does exist, contrary to plaintiff's claims. However, a separate question is whether this process is adequate. Plaintiff provides no insight into this question, and defendants altogether ignored Count IV in their response to the motion for summary judgment. Form PPR.618.4 has not even been translated for the record. Therefore, the Court is not able to evaluate whether this post-deprivation proceeding is adequate enough to guarantee plaintiff's due process rights:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. at 335.

In light of the above, the Court is not convinced that plaintiff is entitled to summary judgment on Count IV. Plaintiff has failed to address the sufficiency of the process provided by the Form PPR.618.4 procedure under applicable procedural due process standards. Accordingly, the motion for summary judgment as to Count IV is **DENIED**.

## V.    Conclusion

The Court does not reach its conclusions here lightly—in fact, it does so somewhat reluctantly. The way both sides have approached this case leaves much to be desired, but

procedural mistakes must occasionally have substantive consequences. This is one such occasion.

On the record before it and for the reasons stated above, the Court **GRANTS IN PART, DENIES IN PART** plaintiff's motion for summary judgment at **ECF No. 63**. Specifically, the Court **GRANTS** summary judgment on plaintiff's second cause of action (Count II) but **DENIES** summary judgment on plaintiff's third and fourth causes of action (Counts III and IV). The Court will refrain from entering final partial judgment at this time and will reserve its decision on the precise formulation of the relief to be issued as to Count II. Fed. R. Civ. P. 54(b).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**